MABEL E. GOULD, APPELLEE, v. BOARD OF HOME MISSIONS OF THE PRESBYTERIAN CHURCH, APPELLANT.

FILED MAY 17, 1918. No. 19629.

1. Foreign Corporations: RIGHT TO HOLD LAND. Under section 6273, Rev. St. 1913, corporations not incorporated under the law of the state of Nebraska are prohibited from taking or holding lands in this state in trust for the use and benefit of another.

2. ———: ———: RIGHTS OF HEIRS. The power to raise the question of the right of the corporation to take the property is not confined to the state, but the question may be raised by the heir or next of kin in an action to quiet title.

3. Wills: DEVISE: CHARITABLE TRUST: INDEFINITENESS. The will under consideration devised to the defendant, a foreign corporation, the

real estate in controversy, "to be appropriated and applied for the use and benefit of the Woman's Board of Home Missions of the Presbyterian Church in the United States of America." *Held*, that the quoted words denote a charitable trust or use for a religious purpose, the beneficiaries of which are uncertain and indefinite until they are selected or appointed to be the particular beneficiaries of the trust for the time being.

4. ———: ———: ———: INCOMPETENCY OF. TRUSTEE. A valid charitable trust created by will will not be permitted to fail because the trustee named therein is incompetent to take title to the real estate, but the court will appoint a competent trustee.

APPEAL from the district court for Buffalo county: BRUNO O. HOSTETLER, JUDGE. *Reversed.*

*F. M. Hall, John N. Dryden, H. W. Baird* and *F. D. Williams,* for appellant.

*H. M. Sinclair, W. D. Oldham* and *N. P. McDonald,* contra.

CORNISH, J.

Agnes V. Gould, deceased, devised to the defendant, a foreign corporation, subject to a life estate in her daughter, the plaintiff, the real estate in controversy, "to be appropriated and applied for the use and benefit of the Woman's Board of Home Missions of the Presbyterian Church in the United States of America." A demurrer to plaintiff's petition was overruled, the will was declared void, and judgment quieting title in plaintiff, heir at law, was entered, from which defendant appeals.

Section 6273, Rev. St. 1913, provides: "Nonresident aliens and corporations not incorporated under the laws of the state of Nebraska are hereby prohibited from acquiring title to or taking or holding any lands or real estate in this state by descent, devise, purchase or otherwise."

Under this prohibition of the statute, intended as a part of the public policy of the state touching land, it is unlawful for the trustee named to take, and hence unlawful for the testator to give to it, the land in con-

troversy. Some cases are cited interpreting statutes limiting the amount of real estate which corporations may acquire, holding that such statutes are regulatory merely of the corporation and can be invoked only by the state. These cases do not apply. This statute is prohibitory. If the language above quoted, together with the sections following, do not forbid and prevent foreign corporations from taking or holding Nebraska land, as against anybody, it would be difficult for a legislature to find words that would accomplish in full a purpose which, in some form or other, has possessed every people which has occupied a territory as its own.

It is thought by the judges that the previous decisions of this court, touching the rights of foreign corporations to hold real estate in this state, should be distinguished. The writer had thought this unnecessary. It would seem to be axiomatic that what the law prohibits is unlawful. In only one case, *Nebraska Power Co. v. Koenig*, 93 Neb. 68, has the statute been invoked. The case was in equity and involved a water-power. Koenig, a fiduciary and agent of the nonresident corporation, undertook to invoke the law under consideration to perpetrate a fraud for his own benefit. Conceding that a water-power right is land, still the case was rightly decided, because, first, as held by the court, Koenig was estopped; second, as recognized in the opinion, the statutes of the state touching the waters of public streams had invited the investment which the nonresident corporation had made; third, the statute which we are considering makes an exception of foreign corporations acquiring real estate necessary for a manufacturing establishment.

In *Carlow v. Aultman & Co.*, 28 Neb. 672, there was a purchase under judicial sale for the collection of a mortgage debt due the nonresident corporation. This was before the present statute, and is clearly within its exception. Rev. St. 1913, sec. 6276. Plaintiffs were estopped. Their attempt to dispute a sale, contractually authorized by their mortgage, the consideration for

which went to them, would amount to fraud upon their part.

In *Myers v. McGavock*, 39 Neb. 843, the court held that the Union Pacific Railway Company, under its charter from the United States, had power to take land for depot purposes. The statute under consideration was not invoked nor discussed, and the rights of the parties accrued before the statute was enacted. The right of a railroad company to acquire necessary real estate is also made an exception in the statute which we are considering. Section 6276, *supra*.

In *Watts v. Gantt*, 42 Neb. 869, a nonresident corporation had a lien upon the land, which it foreclosed. This also comes within the exceptions of the statute. The statute was not invoked nor considered. The contention was that the nonresident corporation under its charter could not acquire the land. This court, following *Missouri Valley Land Co. v. Bushnell*, 11 Neb. 192, held that the question whether the nonresident corporation was attempting to acquire land in excess of its charter authority, and the question whether the nonresident corporation was authorized to do business in this state, could not be raised in that action.

No doubt at common law the right of a foreign corporation to hold land was a matter of comity between it and the state. Learned arguments, based upon the common law and previous legislation and decisions of this state, to show that it was the legislative intent to continue the common-law rights in whole or in part, must be absolutely unavailing in the face of the plain reading of the statute. With certain exceptions, clearly stated, it prohibits taking or holding in any way, and does not make any provision for the disposal of lands so held by a foreign corporation. If further inquiry as to legislative intent is needed, why may we not take judicial knowledge of the fact that this law was passed at a time when the evils of alien landlordism were agitating the public mind everywhere, and especially in

Nebraska, where it was reported that land in solid blocks of from 25,000 to 75,000 acres was already owned by aliens and foreign corporations?

It is said by the attorneys for appellee in their brief that no decision can be found interpreting a statute like ours, which is prohibitory, and not regulative, but holds that a devise, such as the one which we are considering, is void, and the question may be raised by the heir. None has been called to our attention.

3 Clark and Marshall, Private Corporations, secs. 838, 841, 856; *United States v. Fox,* 94 U. S. 315; *Kennett v. Kidd,* 87 Kan. 652; *Proctor v. Board of Trustees,* 225 Mo. 51; *In re Estate of McGraw,* 111 N. Y. 66; *De Camp v. Dobbins,* 31 N. J. Eq. 671; *Wunderle v. Wunderle,* 144 Ill. 40.

It follows that the trustee cannot take. Does it also follow that the will is void, and that the trust or use intended must fail? The inquiry arises whether the trust intended is a public or private trust. If a private trust or gift and invalid for want of a competent trustee, then the trust fails and the will is void. If, on the other hand, it is a charitable trust and ineffectual for want of a trustee competent to take and administer it, a court of equity will give its aid and appoint a trustee, if need be, who can administer it. A distinction between the two classes of trusts is that in private trusts a *cestui que trust* is or may be clearly identified by the terms of the instrument creating the trust; whereas, it is characteristic of a public or charitable trust that its beneficiaries are uncertain—a class of persons described in some general language, changing in their individual members and partaking of a quasi-public character. The intention of the donor to create some kind of a charity must also be clear.

Manifestly the words above quoted do denote an intention to create a charity for a distinct religious purpose, and is it not equally manifest that the intended beneficiaries of this gift for "Home Missions" are an

uncertain and indefinite portion of the public until selected or appointed by the board named?

True, as stated in plaintiff's brief, the board mentioned "are not persons or individuals that cannot be pointed out," and hence, it is argued, the requirement of uncertainty for a charitable trust is wanting. But would it not be strained construction of this language to hold that it means the individuals constituting the board are to be the beneficiaries? Must we not, in the absence of any allegation to the contrary, presume from this language that there is such a board in existence, and that the members of it are not the actual beneficiaries of funds coming into their hands? If the facts are to the contrary, it is for the plaintiff to allege it. It is alleged that the board is "neither a natural nor an artificial person and has no legal entity." This may have been the reason why the devisor thought it necessary to appoint a trustee to take the property in trust. If the board was a body incapable of taking and holding the property, and the devisor sought to obviate this difficulty by naming a trustee, this fact ought not to be permitted to change the nature of the trust. Cases have arisen in which it has been held that, where property has been willed to a charitable organization in trust for such purposes and the organization was incapable of taking, the court will appoint a trustee to enforce the trust. The courts generally, including our own, hold that donations by will for charitable purposes are viewed with favor.

We are of opinion that the trial court erred in overruling the demurrer to plaintiff's petition. The trustee named in the will being incompetent to take, a suitable trustee should be appointed.

For cases bearing upon the questions involved, see *St. James Orphan Asylum v. Shelby,* 60 Neb. 796; *In re Estate of Nilson,* 81 Neb. 809; *In re Estate of Wiese,* 98 Neb. 463, 466; *Hitchcock v. Board of Home Missions,* 259 Ill. 288; *Cummings v. Dent,* 189 S. W. (Mo.) 1161; *Eccles v. Rhode Island Hospital Trust Co.,* 90 Conn.

592; *Chase v. Dickey*, 212 Mass. 555; 3 Pomeroy, Equity Jurisprudence (3d ed.) sec. 1021; 11 C. J. pp. 324, 332, 333; 5 R. C. L. p. 342, sec. 73, and p. 346, sec. 80.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

LETTON and HAMER, JJ., dissent.