STATE OF NEBRASKA, APPELLEE, V. ROBERT D. MARCOTTE, JR.,
APPELLANT.

446 N.W.2d 228

Filed September 29, 1989.    No. 88-1052.

Gregory J. Benak, of Hotz, Kizer & Weaver, P.C., for appellant.

Robert M. Spire, Attorney General, Gary P. Bucchino, Omaha City Prosecutor, and J. Michael Tesar for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Complaining that evidence should have been suppressed because he was illegally arrested and that he was justified in refusing to submit to a breath test, Robert D. Marcotte, Jr., asks this court to set aside his convictions for refusing to provide a breath test and for third-offense driving while under the influence of alcoholic liquor. We reject Marcotte's contentions and affirm.

The defendant was originally convicted of the two offenses after a Douglas County Court bench trial. On the refusal to provide a breath test, Marcotte was fined $200 and sentenced to jail for 7 days, and his driver's license was suspended for 180 days. On the third-offense driving while under the influence of alcoholic liquor, Marcotte received a $500 fine and a 90-day jail sentence, and his motor vehicle operator's license was suspended for 15 years. The defendant was also charged with leaving the scene of an accident, but was found not guilty of that charge. He appealed the two convictions to the Douglas County District Court. They were affirmed. Marcotte timely appealed to this court.

In reviewing Marcotte's claim that certain evidence should have been suppressed because he was illegally arrested, we are reminded of this court's holding:

> In determining the correctness of a ruling on a motion to suppress, the Supreme Court will uphold a trial court's findings of fact unless those findings are clearly wrong. In determining whether a trial court's findings on a motion to suppress are clearly erroneous, this court recognizes the trial court as the trier of fact and may take into consideration that the trial court has observed witnesses testifying regarding such motion.

*State v. Andersen*, 232 Neb. 187, 199, 440 N.W.2d 203, 213 (1989); *State v. Boysaw*, 228 Neb. 316, 422 N.W.2d 346 (1988).

At the suppression hearing in this case, there was evidence that shortly after midnight on February 24, 1988, Marcotte, a regular customer of a Quick Pic store in Omaha, entered the convenience store. The clerk, Rosemarie Akiens, reported to police that the defendant, who she said was highly intoxicated, purchased some items in the store and after a few minutes left the building. Akiens said she saw the defendant get into his pickup truck, proceed to back up rather quickly, and strike an unoccupied automobile in the parking lot. Marcotte exited his vehicle while it was leaning against the car he had struck. He then pulled his truck forward a little bit.

Akiens went to the accident scene and obtained some information from Marcotte, after which he left the scene. Akiens notified the police, and Officer Michael Kurt Spomer was dispatched to the scene at 12:38 a.m. Spomer arrived at the scene about 10 minutes later. Marcotte telephoned Akiens twice before the police officer arrived at the Quick Pic store. Marcotte gave Akiens his address and telephone number at that time, stating he was sorry and "wanted to take care of it." Upon arrival at the scene, Officer Spomer examined the struck vehicle, a Ford Fairmont, and found that it was damaged. The officer then talked to the clerk, who related that she had seen the accident and what had occurred after the collision. The clerk provided the officer with a description of Marcotte's truck, a license plate number, and the address and telephone number that Marcotte had given her.

The police officer, treating the incident as a hit-and-run accident, went to the address Marcotte had given Akiens, but was unable to locate the defendant. After further investigation, the officer proceeded to a location about six blocks from the Quick Pic store. It developed that Marcotte lived in an apartment complex at that location. It was later determined that the address Akiens reported to the officer as being Marcotte's was one where the defendant had lived previously. The officer observed Marcotte's truck and that it was damaged. Officer Spomer contacted the police dispatcher and requested that the dispatcher call Marcotte at his apartment and ask him

to step outside to talk to Spomer.

About 55 minutes after Spomer had been dispatched, and shortly after the dispatcher was contacted, Marcotte stumbled out the front door of the apartment complex and was hesitant as he walked to the police cruiser. Although it was a clear, chilly night, the defendant wore no shoes. He was dressed in jeans and a flannel shirt. When the defendant arrived at the police cruiser, the officer rolled down his window and smelled a strong odor of alcoholic beverage on Marcotte's breath. The defendant's eyes were bloodshot and glazed. His speech was somewhat mumbled. When Spomer asked him about the accident at the Quick Pic store, Marcotte said that he had been at the store and that he had not been involved in an accident, or "if he was that he didn't do any damage to the car." When asked, the defendant denied drinking any alcohol after leaving the Quick Pic store.

Marcotte, at Officer Spomer's request, performed sobriety tests. He flunked some and refused to perform others. The officer formed an opinion that Marcotte's breath-alcohol content was above the legal limit of .10. Thereupon, the officer placed Marcotte under arrest for suspicion of driving while under the influence of alcoholic liquor and for suspicion of leaving the scene of a property damage accident.

Marcotte claims that in the telephone call to him, the police dispatcher ordered him to leave his apartment and go outside to meet Officer Spomer. Marcotte argues that at that point he was under arrest. Contrary to that contention, it can be inferred from the State's evidence that Marcotte was requested to meet Officer Spomer outside of the apartment complex. On that point, the issue is one of credibility. The trial court believed the State's version of what occurred. Applying the rule in *State v. Andersen, supra*, we cannot say that the trial court was clearly wrong in finding that Marcotte was requested, not ordered, to meet Officer Spomer outside of his apartment complex. Nor can we say that the trial court was clearly wrong in finding (1) that the defendant, without being under arrest, voluntarily complied with the request to meet and talk with Officer Spomer and (2) that Marcotte was not under arrest until Spomer told him he was under arrest.

The defendant claims that because no warrant was issued

before he was arrested, his arrest was illegal, and therefore any evidence obtained as a result of the arrest should have been suppressed. Both the U.S. and Nebraska Constitutions guarantee an individual the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV; Neb. Const. art. I, § 7. The failure to obtain a warrant is not fatal to the legality of every warrantless arrest. As the defendant acknowledges, "A warrantless arrest of an individual is a species of seizure which, the courts have ruled, must be reasonable." Brief for appellant at 7. See *Payton v. New York*, 445 U.S. 573, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980). A person is seized when he is arrested. *Dunaway v. New York*, 442 U.S. 200, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979). Whether the arrest of Marcotte was legal depends upon the reasonableness of his seizure under the circumstances.

The defendant correctly points out that (1) when he was arrested, the arrest was without a warrant; (2) each of the three charges filed against him is a misdemeanor; and (3) none of the offenses for which he was arrested was committed in the presence of the arresting officer. The defendant also correctly argues that without an exigent circumstance, a police officer may not arrest an individual for a misdemeanor unless it is committed in the officer's presence. Marcotte claims that no exigent circumstance existed at the time of his arrest.

The Nebraska Legislature has addressed the reasonableness of a warrantless arrest. Neb. Rev. Stat. § 29-404.02 (Reissue 1985), in regard to arresting persons for misdemeanors without a warrant, provides:

A peace officer may arrest a person without a warrant if the officer has reasonable cause to believe such person has committed:

. . . .

(2) A misdemeanor, and the officer has reasonable cause to believe that such person either (a) will not be apprehended unless immediately arrested; (b) may cause injury to himself or others or damage to property unless immediately arrested; (c) may destroy or conceal evidence of the commission of such misdemeanor; or (d) has committed a misdemeanor in the presence of the officer.

There is sufficient evidence to support the trial court's finding that when Officer Spomer arrested the defendant, the officer had reasonable cause to believe that Marcotte had committed the misdemeanor of driving while under the influence of alcoholic liquor. "When a law enforcement officer has knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect has committed a crime, the officer has probable cause to arrest without a warrant." *State v. Wickline*, 232 Neb. 329, 333, 440 N.W.2d 249, 252-53 (1989). If the offense is a misdemeanor, then one of the conditions set forth in § 29-404.02 must be present.

Before Marcotte's arrest, an eyewitness, the Quick Pic clerk Akiens, had detailed to Officer Spomer that a highly intoxicated man had exited her store, had quickly driven his pickup truck in reverse, and had struck a parked car before driving from the parking lot. Akiens had provided Spomer with a detailed description of the man and the pickup he was driving; his name, address, and telephone number; and the pickup's license plate number. An informant's detailed eyewitness report of a crime supplies its own indicia of reliability, and a citizen informant who has personally observed the commission of a crime is presumptively reliable. *State v. Ege*, 227 Neb. 824, 420 N.W.2d 305 (1988); *State v. Duff*, 226 Neb. 567, 412 N.W.2d 843 (1987).

Before arresting the defendant, in addition to the detailed information that Akiens had provided him, Officer Spomer also had observed that both the car in the parking lot and Marcotte's pickup were damaged, that the defendant's breath had a strong odor of alcohol, that the defendant's eyes were bloodshot and glazed, that Marcotte's balance was unsure, and that he had stumbled and mumbled and had failed some field sobriety tests. The officer had also established, through questioning, the defendant's identity, that Marcotte had been at the Quick Pic store, and that he claimed not to have been in an accident, or if he had been, that he "didn't do any damage to the car." The officer further established by questioning Marcotte that the defendant had drunk no alcohol after he left the Quick Pic store. Based upon these facts and his training and

experience as a police officer, Spomer concluded that Marcotte's breath-alcohol content was above the legal limit for driving. Obviously, the defendant had driven to his apartment from the Quick Pic store. With the facts provided him and upon that gained by his observations, Spomer arrested the defendant.

After a review of the record, we cannot say that the trial court was clearly wrong in finding that Spomer had probable cause to arrest the defendant. However, this does not end the analysis. It remains to be determined whether the warrantless arrest was proper under these circumstances.

Marcotte argues that his warrantless arrest was not lawful because (1) his identity was known to the officer, and the defendant could be arrested at any time; (2) he was at home, and there was no probable cause to believe that he would injure himself or others or damage property; and (3) there was no probable cause to believe that he would destroy or conceal evidence of the commission of a misdemeanor, as required by § 29-404.02. The State contends that destruction of evidence through dissipation of Marcotte's blood-alcohol or breath-alcohol level over time is sufficient justification under § 29-404.02(2)(c) for a warrantless arrest. The issue has previously been decided favorably to the State's position.

In *State v. Bishop*, 224 Neb. 522, 399 N.W.2d 271 (1987), this court held that because evidence of a defendant's intoxication would be lost if the police had to wait to obtain a search warrant, a warrantless arrest is valid. See, also, *Schmerber v. California*, 384 U.S. 757, 86 S. Ct. 1826, 16 L. Ed. 2d 908 (1966) (holding that because the delay in obtaining a warrant threatened the destruction of evidence due to the diminishment of the alcohol in the blood, a warrantless seizure of a blood sample from a suspected drunk driver was appropriate). There being probable cause to arrest Marcotte and because the warrantless arrest was necessary to preserve evidence, Marcotte's first assignment of error is without merit.

In his last assignment of error, Marcotte argues that his refusal to submit to a chemical test was justified because his arrest was unlawful. However, Marcotte's arrest was lawful. Therefore, his refusal to take the chemical test was unjustified. See *Hoyle v. Peterson*, 216 Neb. 253, 256, 343 N.W.2d 730, 733

(1984) (stating that "[j]ustifiable refusal of the test depends upon some illegal or unreasonable aspect in the nature of the request, the test itself, or both"). Marcotte's last assignment of error is meritless.

The defendant's convictions and sentences are affirmed.

AFFIRMED.